# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neshaminy School District,    :
                    Petitioner    :
                                   :

       v.    :
                                   :

MaST-Neshaminy Charter School,    :   No. 52 C.D. 2016
                    Respondent    :   Submitted: October 17, 2016

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                       FILED: November 10, 2016

Neshaminy School District (District) petitions this Court for review of the State Charter School Appeal Board's (CAB) January 6, 2016 order granting MaST-Neshaminy Charter School's (MaST-Neshaminy) appeal and directing the District to issue MaST-Neshaminy a charter. The District presents three issues for this Court's review: (1) whether CAB committed an error of law or abused its discretion when it held that MaST-Neshaminy obtained a suitable facility pursuant to Section 1719-A(11) of the Charter School Law (CSL);[1] (2) whether CAB committed an error of law or abused its discretion by concluding that MaST-Neshaminy complied with Section 1717-A(e)(2)(i) of the CSL[2] by demonstrating sustainable support for MaST-Neshaminy in the District; and (3) whether CAB committed an error of law or abused its discretion by concluding that MaST-Neshaminy complied

---

[1] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 17-1719-A(11). Article XVII- A of the School Code, relating to Charter Schools, was added by Section 1 of the Act of June 19, 1997, P.L. 225.

[2] 24 P.S. § 17-1717-A(e)(2)(i).

with Section 1717-A(e)(2)(iv) of the CSL[3] by demonstrating that MaST-Neshaminy would be a model for other public schools. After review, we affirm.

On October 18, 2012, MaST-Neshaminy submitted an application with the District to establish a charter school in the District that would focus on providing science, technology, engineering and mathematics to students in grades kindergarten through twelve (Application). After holding public hearings on November 29, 2012 and February 11, 2013, the District's Board of School Directors (Board) voted to deny the Application. On March 18, 2013, the Board adopted a Resolution with Findings of Fact and Conclusions of Law in support of its denial. The Board based its denial on three reasons: (1) lack of demonstrated sustainable support for the charter school; (2) failure to identify a suitable facility; and (3) failure to demonstrate that MaST-Neshaminy would be a model for other public schools.

Thereafter, MaST-Neshaminy filed a Signature Petition (Petition) with the Bucks County Common Pleas Court (trial court). After a hearing, the trial court, on January 31, 2014, determined that the Petition was sufficient and allowed MaST-Neshaminy's appeal from the Board's denial to CAB. On February 12, 2014, MaST-Neshaminy filed an appeal with CAB.[4] On January 6, 2016, CAB granted MaST-Neshaminy's appeal and directed the District to issue MaST-Neshaminy a charter. The District appealed to this Court.[5]

---

[3] 24 P.S. § 17-1717-A(e)(2)(iv).

[4] On April 17, 2014, the District filed the Reproduced Record with CAB. Following receipt of the record, the hearing officer held a telephonic pre-hearing conference with counsel, and by April 30, 2014 Order permitted the parties to file various procedural motions with specified deadlines. The District filed a Motion to Dismiss the Appeal for Failure to Identify a Suitable Facility (Motion to Dismiss). Both parties filed various Motions to Supplement the Record. On April 7, 2015, CAB issued an Order denying the District's Motion to Dismiss and granted MaST-Neshaminy's Second Motion to Supplement the Record. On May 8, 2015, the hearing officer issued an Order resolving the remaining outstanding Motions to Supplement the Record, establishing the Documentary Record before CAB and setting briefing deadlines.

[5] "Our scope of review of an order of [CAB] is limited to a determination of whether constitutional rights were violated, [whether] errors of law [were] committed or whether the

2

The District first argues that CAB committed an error of law or abused its discretion when it held that MaST-Neshaminy had obtained a suitable facility in accordance with Section 1719-A(11) of the CSL. Specifically, the District contends that CAB erred by concluding that a mere two pages of documents were sufficient to allow the Board to decide whether any of the proposed facilities comply with the CSL's requirements. Further, the District asserts that MaST-Neshaminy did not meet the suitable facility requirement because the intent to lease or purchase letter is not between MaST-Neshaminy and the facility owner, but rather between the facility owner and a for-profit, unrelated third party.

MaST-Neshaminy rejoins that it submitted more than enough information to show that it complied with Section 1719-A(11) of the CSL. Moreover, MaST-Neshaminy maintains that the "for-profit, unrelated third party" is MaST-Neshaminy's property developer John Parsons (Parsons). In addition to the intent to lease or purchase letter, MaST-Neshaminy also provided a memorandum of understanding between MaST-Neshaminy and Parsons stating that the developer will purchase and develop the property for use as a charter school and lease it to MaST-Neshaminy.

A similar argument to the District's contention herein was raised by the school district in *Carbondale Area School District v. Fell Charter School,* 829 A.2d 400 (Pa. Cmwlth. 2003). Specifically,

> [t]he [school d]istrict contend[ed] that [the charter school had to] submit a more complete description of the proposed facility, including a written lease agreement, a capital improvement plan, or an agreement of sale for the purchase of real estate. . . .

---

decision is not supported by substantial evidence." *Cmty. Serv. Leadership Dev. Charter Sch. v. Pittsburgh Sch. Dist.*, 34 A.3d 919, 924 n.7 (Pa. Cmwlth. 2012).

[] CAB, however, concluded that the type of information the [school d]istrict would like in the application is not required by the [CSL]. It state[d]: '[t]he law simply requires a general description of the facility, its address, ownership information, leasing arrangements, suitability, and safety considerations.' In rendering its decision, [] CAB relie[d] on the [c]harter [s]chool [a]pplication, which list[ed] the address at 775 Main Street, Simpson, Pennsylvania, and the fact that Mosaica was negotiating to purchase a property and construct a building of approximately 40,000 square feet for additional classrooms. Additionally, [] **CAB relied extensively on the [m]emorandum of [u]nderstanding between [the charter school] and . . . the current owner of the property** at 775 Main Street[], which was submitted with the application. The [m]emorandum provides an additional description of the site, including a floor plan, and an architectural drawing. Additionally, [] CAB relied on the lengthy discussion at the June 25, 2001 hearing before the [s]chool [b]oard.

**The CSL requires an applicant to provide '[a] description of and address of the physical facility in which the charter school will be located and the ownership thereof and any lease agreements.'** . . . 24 P.S. § 17–1719–A(11). Further, under Section 1722–A(a) of the C[SL], **a charter school may be located on 'space provided on a privately[-]owned site, in a public building or in any other suitable location.'** 24 P.S. § 17–1722–A(a). **A charter school facility must comply only with the public school regulations that concern health or safety of students.** Section 1722–A(b) of the CSL, 24 P.S. § 17–1722–A(b).

We agree with [] CAB that [the charter school] complied with the requirements of the CSL. Although the additional information would be helpful in making a determination, it is not statutorily required. As we stated in *Brackbill* [*v. Ron Brown Charter School,* 777 A.2d 131 (Pa. Cmwlth. 2001)], '[a]lthough an applicant must include a proposed facility in its application, **there is no requirement that the facility be under a contractual obligation before the charter is granted**.' *Id*. at 139. . . . Consequently, the [school d]istrict's argument as to this issue is rejected.

4

*Carbondale,* 829 A.2d at 408 (citation omitted; emphasis added). Moreover, this Court in *Montour School District v. Propel Charter School-Montour,* 889 A.2d 682 (Pa. Cmwlth. 2006), held that "the proposed facility must be presented for the District or CAB to approve prior to the school opening, and before the application is granted." *Id.* at 690.

Here, because both sites identified in the Application became unavailable between the time of the Application's denial and the CAB appeal, MaST-Neshaminy filed a Second Motion to Supplement[6] which included information regarding four alternate locations. As CAB explained:

> MaST-Neshaminy has provided information about the location at 181 Wheeler Court, Langhorne, PA, which, according to its statement in its Brief in Support of [i]ts Second Motion to Supplement the Record, is now its first choice for the location of the charter school. The information provided by MaST-Neshaminy includes an address of the physical facility; information regarding the ownership of the facility; a letter from the owner to the property developer indicating a willingness to lease or sell the facility for use by a charter school; a memorandum of understanding between MaST-Neshaminy and the property developer, who will purchase and develop the property, regarding the use of the facility as a charter school; and a conceptual drawing as to how the property will be developed for the charter school.

CAB Op. at 24-25 (citation and footnotes omitted). The above statement of facts is not challenged by the District and is supported by the record. Further, CAB granted MaST-Neshaminy's charter "on the condition that a school facility in compliance with all applicable laws is constructed at one of the four sites proposed in MaST-Neshaminy's Second Motion to Supplement the Record." CAB January 6, 2016 Order.

---

[6] MaST-Neshaminy's original Motion to Supplement contained a location that became unavailable.

5

CAB opined:

> The supplemental materials provided by MaST-Neshaminy meet the requirements of the CSL. However, under prior precedent, a school district has the opportunity to ensure that the facility ultimately constructed complies with all applicable laws. *See Montour School District. . . .* Thus, as a condition of granting a charter in this appeal, the facility ultimately constructed for the school must be a legally compliant school building and must be inspected and approved by the [] District in order for the charter school to open.

CAB Op. at 26. We discern no error in this analysis. Because MaST-Neshaminy submitted all the information the CSL requires in its Second Motion to Supplement regarding its proposed facility, and CAB conditioned MaST-Neshaminy's charter on its use of a legally-compliant school building, MaST-Neshaminy's proposed facility does not violate the CSL.

The District next argues that CAB committed an error of law or abused its discretion by concluding that MaST-Neshaminy complied with Section 1717-A(e)(2)(i) of the CSL by demonstrating sustainable support for MaST-Neshaminy in the District when only eight community members spoke at the public hearing in support of the Application and there was no support from teachers and/or administrators. MaST-Neshaminy retorts that it provided hundreds of pre-enrollment forms, hundreds of signatures on the Petition in favor of the school, and evidence of support from teachers and administrators. Further, MaST-Neshaminy maintains that CAB correctly concluded that **ten** people spoke in support of the Application at the hearing.

CAB expressly concluded: "Ten (10) people spoke in support of MaST-Neshaminy during the public hearings on the Application. [Certified Reproduced

6

Record (C.R.R.)[7] at Vol. 1,] 14-16, [Vol. 4,] 1115-1117, 1119 -1121." CAB Op. at 6, Finding of Fact (FOF) 24. In fact, the record evidence contains the testimony of eleven people who spoke in support of MaST-Neshaminy's Application. Specifically, the record evidence contains testimony, from the November 29, 2012 hearing in support of MaST-Neshaminy's Application, of District parent Deb Harker, Langhorne resident/District parent Suzie Merchant, Levittown resident/District parent Karen Gatewood and Langhorne resident/District parent Michael Noga. *See* C.R.R. at Vol. 1, 14-16. It also contains testimony, from the February 11, 2013 hearing in support of MaST-Neshaminy's Application, of Levittown resident/charter school parent John McLaughlin, Langhorne resident/District parent Charles Alfonso, Langhorne resident/private school parent Gail Tehibodeau, Langhorne resident Dennis Brophy and Langhorne resident/District parent Karen Blumenfield, *see* C.R.R. at Vol. 4, 1115-1117, and Langhorne resident/founding member of MaST-Neshaminy Jennifer Bouton and Levittown resident/founding member of MaST-Neshaminy Matt Pilleggi. *See* C.R.R. at Vol. 4, 1119-1121. Thus, CAB's conclusion is supported by substantial evidence.

With respect to the contention that two of the testifying supporters were founding members of MaST-Neshaminy: "[N]othing in the CSL prohibits members of the [b]oard of [d]irectors of a proposed charter school from testifying. As the board members who testified are either parents, teachers, or other members of the community, we find that their testimony supporting the charter school plan was properly relied upon by the CAB." *Brackbill,* 777 A.2d at 137.

Moreover, Section 1717-A(e)(2)(i) of the CSL provides that **one of the required criteria** includes: "The demonstrated, sustainable support for the charter

---

[7] Three "Records" were provided to this Court: (1) the "Certified Record" from CAB; (2) the District's "Certified Reproduced Record"; and (3) the District's "Reproduced Record". While all three "Records" contain the same content, all have different page numbering.

school plan by teachers, parents, other community members and students, **including comments received at the public hearing** . . . ." 24 P.S. § 17-1717-A(e)(2)(i) (emphasis added). "Since review of this issue turns on statutory construction, we look to the CAB's interpretation for guidance." *Brackbill*, 777 A.2d at 137-38. CAB interpreted Section 1717–A(e)(2)(i) of the CSL to mean that "support is measured in the aggregate," and concluded "it was inappropriate for the District Board to isolate each potential type of support and found it inadequate on an individual basis." CAB Op. at 21. "Accordingly, CAB [held] that the evidence of record demonstrate[d] sufficient sustainable support, in the aggregate, to meet the requirements of the CSL and reject[ed] the District Board's finding to the contrary." *Id.*

> We find [] CAB's construction of Section 1717–A(e)(2)(i) [of the CSL] to be reasonable. The text of the statute, making the 'demonstrated, sustainable support . . . by teachers, parents, other community members and students' one of several nonexclusive 'criteria,' suggests a less rigid interpretation than that urged by the [] District. In particular, the insertion of the term 'other community members' makes clear that the emphasis of Section 1717– A(e)(2)(i) [of the CSL] is on the applicant showing that the charter school enjoys reasonably sufficient support from the community, not showing some minimum level of support from each of the more discrete groups listed.

*Brackbill,* 777 A.2d at 138. "In light of the strong community support demonstrated by the petitions and the other testimony presented at [] CAB's [November 29, 2012 and February 11, 2013] hearing[s], we conclude that [] CAB did not err in finding [MaST-Neshaminy] had demonstrated sufficient community support." *Id*.

Lastly, the District argues that CAB committed an error of law or abused its discretion by concluding that MaST-Neshaminy complied with Section 1717-A(e)(2)(iv) of the CSL by demonstrating that MaST-Neshaminy would be a model for other public schools because MaST-Neshaminy does not expand the curriculum choices for students. MaST-Neshaminy responds that the record is replete with ways

in which MaST-Neshaminy will offer an education program that is different from the District's program, and thus, it can serve as a model for other public schools.

Section 1717-A(e)(2)(iv) of the CSL requires an applicant to show: "The extent to which the charter school may serve as a model for other public schools." 24 P.S. § 17-1717-A(e)(2)(iv). Further,

> [t]he legislative intent behind the CSL is 'to establish and maintain schools that operate independently from the existing school district structure as a method to accomplish . . . [and e]ncourage the use of different and innovative teaching methods. . . .' 24 P.S. § 17–1702–A(2). In order to achieve this goal, the CSL requires an applicant to provide information regarding the 'mission and education goals of the charter school, the curriculum to be offered and the methods of assessing whether students are meeting educational goals.' 24 P.S. § 17–1719–A(5).

*Montour School District,* 889 A.2d at 687-88. "While there may be similarities between [MaST-Neshaminy] and the existing public schools, similarities, alone, are insufficient to support a finding of non-compliance with the CSL when there is substantial evidence of uniqueness." *Id.* at 688.

Here, CAB opined:

> The Application and supporting materials describe a learning environment that is unique and different from that in the [] District's public schools. The fact that the [] District has some programs similar in nature to those outlined by MaST-Neshaminy is irrelevant to the consideration. The record establishes that MaST-Neshaminy's educational program is innovative and distinctive from the [] District's. The record establishes, *inter alia*, different and innovative teaching methods would be utilized, new professional opportunities for teachers would be created, and more up to date state-of-the-art technology, different learning environments, including an outdoor classroom and 3-D technology, and an emphasis on

9

> STEM [science, technology, engineering and mathematics] would be provided to students.

CAB Op. at 30. CAB concluded: "After a review of the record, CAB disagrees with the District Board's findings, and, consistent with the discussion above, finds that MaST-Neshaminy's program may serve as a model for other public schools." *Id.* We discern no error in CAB's conclusion which is supported by substantial record evidence.

For all of the above reasons, CAB's order is affirmed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neshaminy School District,         :
                  Petitioner   :
                             :
         v.                  :
                             :
MaST-Neshaminy Charter School,   :   No. 52 C.D. 2016
                  Respondent  :

## O R D E R

AND NOW, this 10th day of November, 2016, the State Charter School Appeal Board's January 6, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge